# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 26, 2009

Charles R. Fulbruge III
Clerk

No. 07-60203

JOSE ALEXANDER GONZALEZ-REYES

Petitioner

v.

ERIC H. HOLDER, U.S. Attorney-General

Respondent

Petition for Review of an Order of the Board of Immigration Appeals
A97 540 166

Before JOLLY, BARKSDALE, and HAYNES, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:[*]

Jose Alexander Gonzalez-Reyes seeks relief from the Board of Immigration Appeals' (BIA) affirming the Immigration Judge's (IJ) order of removal. Primarily at issue is the IJ's relying on admissions by Gonzalez, an unaccompanied minor, in his post-apprehension interview by an immigration officer. DENIED.

---

[*] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

At age 14, Gonzalez was one of 13 aliens apprehended on 9 October 2003 as a result of an immigration inspection in El Cenizo, Texas. Gonzalez was transferred to a patrol station, where he was interviewed by an immigration officer, and later released to his mother, as discussed *infra*. Based on the interview, a form I-213, Record of a Deportable/Inadmissible Alien, was prepared.

An I-213 is an official record routinely prepared by immigration officers. It contains a summary of information obtained at the initial processing of an individual suspected of being an alien unlawfully present in the United States. The record includes, *inter alia*, the individual's name, address, immigration status, the circumstances of the individual's apprehension, and any substantive comments the individual may have made. *See*, *e.g.*, *Bauge v. INS*, 7 F.3d 1540, 1543 n.2 (5th Cir. 1993).

That same day, 9 October 2003, Gonzalez was served, through his mother, with a Notice to Appear. The notice charged him with removability under INA § 212(a)(6)(A)(i), on the grounds that he was not a United States citizen, was a citizen of El Salvador, and had entered the United States without having been admitted or paroled after inspection by an immigration officer.

At a removal hearing on 19 February 2004, at which he was represented by counsel, Gonzalez denied all of the charges and sought to suppress introduction in evidence of the form I-213. As discussed, the I-213 contained information obtained by the immigration officer who interviewed Gonzalez after he had been apprehended. Gonzalez told the interviewing officer he was born in 1989 in El Salvador; left El Salvador by bus and traveled to Mexico; and waded

across the Rio Grande to the United States, en route to Austin, Texas, to join his mother.

Both of Gonzalez' parents had come to the United States in 1998, and obtained temporary protected status (TPS) in 2001. TPS is a temporary immigration status granted to eligible nationals of designated countries. *See* 66 Fed. Reg. 14214 (Mar. 9, 2001); 8 C.F.R. §§ 244.1 to 244.20. TPS is granted upon a finding that such nationals are temporarily unable to return to their home countries because of an ongoing armed conflict, environmental disaster, or other extraordinary conditions. 66 Fed. Reg. 14214. El Salvador was designated for TPS in 2001, as a result of devastation caused by a series of severe earthquakes. *Id.* That designation has been extended five times due to the finding by the Department of Homeland Security (DHS) that El Salvador was still temporarily unable to handle the return of its nationals because of the continuing disruption of the living conditions caused by the 2001 earthquakes. *See* 67 Fed. Reg. 46000 (July 11, 2002); 68 Fed. Reg. 42071 (July 16, 2003); 70 Fed. Reg. 1450 (Jan. 7, 2005); 71 Fed. Reg. 34637 (June 15, 2006); and 72 Fed. Reg. 46649 (Aug. 21, 2007).

Gonzalez' objection to the I-213's admissibility was based on his being an unaccompanied minor at the time of the interview. Gonzalez claimed admitting the I-213 in evidence would violate his Fourth and Fifth Amendment rights, BIA decisions, and federal regulations. After the I-213 was admitted over Gonzalez' objection, Gonzalez refused to testify, invoking the Fifth Amendment right against self-incrimination, despite both the Government's counsel's and the IJ's noting that, because Gonzalez was a minor, he could *not* be criminally prosecuted.

Gonzalez also asked to be allowed to cross-examine the I-213's preparer. That request was overruled.

In his oral decision rendered on the day of the removal hearing (19 February), the IJ concluded Gonzalez was removable as charged. The IJ found: the I-213 was inherently trustworthy to establish alienage; and there was no evidence the information in the I-213 was obtained through coercion, duress, or violation of law. The IJ also concluded that Gonzalez' statements to the immigration officer, as reflected in the I-213, did *not* concede removability; rather, they were "simple statements . . . concerning his life factors . . . such as date of birth, place of birth, parents names and other data that would be appropriately obtained by an immigration officer".

At a subsequent hearing on 20 April 2004 for relief from removal, Gonzalez informed the IJ that he intended to seek reconsideration of removability. Gonzalez submitted a supporting affidavit, in which, for the first time, he related the circumstances of his apprehension and interview by the immigration officer. According to the affidavit: Gonzalez was approached by immigration officers, taken by van to an immigration office in Del Rio, Texas, placed in a cell block, and questioned repeatedly about his name, date and place of birth, and presence in the United States; he answered all the questions because he was "fearful and confused" and the officer was "irritated" and "angry" and even "cursed" him; the officer then made Gonzalez sign papers he did not understand; after several hours of detention, Gonzalez was released to his mother who lived in Austin, Texas; and, had he known of his right to remain silent, he would have refused to answer the officer's questions and would have called his mother.

4

The IJ accepted the affidavit, but declined to alter his decision on removability, reasoning: both parties rested on the issue at the 19 February 2004 removal hearing; the decision on removability was based on the law and evidence presented at that hearing; and nothing had changed either legally or factually since then.

Following the 20 April hearing, the IJ retired, and the matter was reassigned. On 23 August 2005, the IJ to whom the matter had been reassigned concurred with the finding of removability, denied an indefinite continuance while Gonzalez sought TPS, and granted voluntary departure.

Gonzalez' subsequent appeal to the BIA was dismissed. A divided BIA panel held: the admission in evidence of the I-213 was not erroneous, because it was inherently reliable to establish removability, and Gonzalez failed to show the information in the I-213 was incorrect, or a product of coercion or duress; the IJ's not allowing Gonzalez to cross-examine the I-213's preparer was not erroneous, because Gonzalez did not assert the information in the form was inaccurate; and Gonzalez' request for reconsideration was untimely under 8 C.F.R. § 1003.23(b)(1) (requiring motions for reconsideration to be filed "within 30 days of the date of entry of a final administrative order of removal, deportation, or exclusion").

The BIA further ruled that, even if admitting the I-213 in evidence was erroneous, Gonzalez' TPS application, which was filed during the course of the removal proceedings, sufficiently supported the finding of removability.

One panel member dissented, reasoning that the I-213 was not inherently reliable to establish removability because "[a] minor respondent can lack

maturity to appreciate and evaluate foreseeable consequences of his or her responses provided in a custodial interrogation".

## II.

"The BIA's factual findings are reviewed for substantial evidence; rulings of law, *de novo*, deferring to the BIA's interpretation of the immigration statutes." *Mireles-Valdez*, 349 F.3d 213, 215 (5th Cir. 2003) (citations omitted). In challenging the BIA's decision, Gonzalez claims the IJ erred in admitting the I-213 because: (1) the information was obtained in "egregious violation" of Gonzalez' constitutional rights; (2) the information was not given *voluntarily* because it was obtained in an unfair and coercive manner; (3) the information was obtained in violation of the DHS regulations; (4) the IJ failed to conduct an *Amaya* hearing to determine Gonzalez' capacity to understand the facts admitted through the I-213; and (5) the IJ failed to allow cross-examination of the I-213's preparer. Gonzales also challenges the BIA's reliance on Gonzalez' TPS application in its upholding removability. Without the I-213 and TPS application, Gonzalez asserts, the Government has not met its burden of proof to support removability.

Alternatively, in the event we find no error regarding any of the above-referenced claims, Gonzalez seeks remand to the BIA (and ultimately, to the IJ) with instructions to hold his case in abeyance while his TPS application is pending.

## A.

The Government contends we are jurisdictionally barred from reviewing Gonzalez' constitutional, "voluntariness", and regulatory claims because he failed to exhaust his administrative remedies by not raising those claims before

the BIA. An alien "must exhaust before the BIA all claims that he raises in the federal courts, that is, unless they are constitutional". *Falek v. Gonzales*, 475 F.3d 285, 289 (5th Cir. 2007); *see also* 8 U.S.C. § 1252(a)(2)(D). The exhaustion requirement may be met either on direct appeal to the BIA or in a motion to reopen. *Wang v. Ashcroft*, 260 F.3d 448, 453 (5th Cir. 2001). "Simply alleging facts without articulating a legal theory for recovery is insufficient to exhaust administrative remedies as to the unstated legal theory." *Al-Mousa v. Gonzales*, 166 F. App'x 746, 748 (5th Cir. 2006) (unpublished).

On appeal to the BIA, Gonzalez claimed three errors by the IJ: (1) admitting the I-213 in evidence, because the statements were obtained from an unaccompanied minor; (2) not allowing Gonzalez to cross-examine the I-213's preparer; and (3) refusing to reconsider his findings to take into account Gonzalez' newly-submitted affidavit, and failing to conduct an *Amaya* inquiry. Three of Gonzalez' claims were *not* exhausted before the BIA: his "voluntariness" claim; his claim that the I-213 statements were obtained in violation of federal regulations; and his request for remand with instructions to hold the case in abeyance, while Gonzalez' TPS application is pending. (In any event, Gonzalez seems to be ineligible for TPS because he entered the United States after the designated date of 13 February 2001, *see* 8 C.F.R. § 244.2(c) (requiring a TPS applicant, *inter alia*, to show continuous residence in the United States "since such date as the Attorney General may designate").) Accordingly, we do not have jurisdiction to review those three issues.

## B.

As noted, Gonzalez' constitutional claim (concerning the Fourth and Fifth Amendments) is not subject to the exhaustion requirement. The claim is

reviewed *de novo*. *See* 8 U.S.C. § 1252(a)(2)(D); *Falek*, 475 F.3d at 291; *Soadjede v. Ashcroft,* 324 F.3d 830, 831 (5th Cir. 2003).

Because a removal proceeding "is a purely civil action to determine eligibility to remain in this country, not to punish an unlawful entry", the Fourth Amendment exclusionary rule does not apply in removal proceedings, absent some "*egregious violations* of Fourth Amendment or other liberties". *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1038, 1050-51 (1984) (emphasis added); *see also Mendoza-Solis v. INS*, 36 F.3d 12, 14 (5th Cir. 1994); *Verduzco-Contreras v. Gonzales*, 160 F. App'x 406, 408 (5th Cir. 2005) (unpublished). Accordingly, under that egregious-violation exception, Gonzalez claims the I-213 should have been suppressed because his statements were obtained in egregious violation of his Fourth and Fifth Amendment rights.

Since the Supreme Court's 1984 decision in *Lopez-Mendoza*, we have never reversed, based on a finding of egregious violation of an alien's constitutional rights, an IJ's admitting into evidence an alien's statements. *See, e.g.*, *Bustos-Torres v. INS*, 898 F.2d 1053, 1056-57 (5th Cir. 1990) (ruling that the I-213 was properly admitted because it was "clearly relevant and material and . . . not repetitious", despite an immigration officer's failure to give a *Miranda*-like warning). One circuit found egregious violations in other contexts. *E.g.*, *Lopez-Rodriguez v. Mukasey*, 536 F.3d 1012 (9th Cir. 2008) (entering aliens' residence without a warrant and without consent); *Gonzalez-Rivera v. INS*, 22 F.3d 1441 (9th Cir. 1994) (race-based border stops).

"The test for admissibility of evidence in a [removal] proceeding is whether the evidence is probative and whether its use is fundamentally fair so as not to deprive the alien of due process of law." *Bustos-Torres*, 898 F.2d at 1055. An I-

213 is admissible to prove alienage and removability, absent an indication that the form "contains information that is incorrect or was obtained by coercion or duress". *Matter of Barcenas*, 19 I. & N. Dec. 609, 611 (BIA Mar. 23, 1988).

Gonzalez does not assert that the statements reflected in the I-213 are not his, or that they are incorrect. *See id.* To the contrary, in his post-removal-hearing affidavit, Gonzalez stated he answered truthfully the immigration officer's questions. Instead, Gonzalez claims the statements reflected in the I-213 should have been suppressed because they were obtained through improper interrogation techniques used on a minor.

Gonzalez' allegations of coercion are insufficient to establish the interviewing immigration officer committed the requisite "egregious violation" of Gonzalez' constitutional rights. The immigration officer's alleged failure to advise Gonzalez of his right to remain silent and his right to counsel (at no expense to the Government), would not be egregious, because, as noted, removal proceedings are "civil, not criminal in nature". *Sewani v. Gonzales*, 162 F. App'x 285, 288 (5th Cir. 2006) (unpublished) ("*Miranda* warnings are not required in the deportation context".) (citing *Bustos-Torres*, 898 F.2d at 1056). Likewise, the immigration officer's alleged repeated questioning of Gonzalez and raising his voice do not rise to the level of the requisite egregious violation that would render the admission in evidence of the I-213 fundamentally unfair.

Furthermore, other than his affidavit, nothing in the record supports Gonzalez' allegations of egregious constitutional violations. At his 19 February 2004 removal hearing, he refused to testify, although, as a minor, he did not face criminal prosecution and was so advised. "Where a party wishes to challenge the admissibility of a document, the mere offering of an affidavit is not sufficient to

9

sustain his burden." *Barcenas*, 19 I. & N. Dec. at 611. "If the affidavit is such that the facts alleged, if true, could support a basis for excluding the evidence in question, then the claims must also be supported by testimony." *Id.*

In addition, the allegations of coercion were untimely. At the 19 February 2004 removal hearing, Gonzalez did not challenge the admission in evidence of the I-213 on the basis that his statements were coerced. The record, as it stood at the time of that hearing, does not show Gonzalez provided any evidentiary basis for questioning the I-213's validity. It was not until nearly two months after the 19 February hearing that Gonzalez sought to introduce his affidavit to support his challenge to the I-213's admissibility. The admission of the I-213 was not erroneous because the form was probative, and it was not fundamentally unfair to admit it.

The BIA also determined correctly that the IJ did not err in refusing to reconsider his finding of removability based on Gonzalez' affidavit. Denials of motions to reconsider or reopen are reviewed for abuse of discretion. *Singh v. Gonzales*, 436 F.3d 484, 487 (5th Cir. 2006). The affidavit was submitted nearly two months after both parties had rested at the 19 February removal hearing; it did not contain any evidence that could not have been introduced at that hearing; and the request for reconsideration was untimely. *See* 8 C.F.R. § 1003.23(b)(1) (requiring motions to reconsider to be filed "within 30 days of the date of entry of a final administrative order of removal, deportation, or exclusion").

Assuming, *arguendo*, that Gonzalez' motion to reconsider should have been treated as a motion to reopen based on the new evidence contained in his affidavit (in which case, the motion would have been timely, *see* 8 C.F.R. §

10

1003.23(b)(1) (90 days)), the IJ did not abuse his discretion because, as noted, the alleged evidence of coercion was previously available to Gonzalez and could have been presented at the 19 February hearing. *See* 8 C.F.R. § 1003.23(b)(3) (requiring a motion to reopen to establish that "evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing"); *see also Manzano-Garcia v. Gonzales*, 413 F.3d 462, 469 (5th Cir. 2005). Gonzalez' constitutional challenge to the I-213's admissibility fails.

C.

Gonzalez and the opinion concurring in the judgment claim the IJ failed to comply with the requirements established in *In re Efrain Amaya-Castro*, 21 I. & N. Dec. 583 (BIA 1996). *Amaya* involved a *pro se* minor who admitted removability at a removal hearing. *Id.* at 584. Based solely on that admission, the IJ found the minor removable as charged. *Id.* at 585. In *Amaya*, the BIA explained the requirements in former 8 C.F.R. § 242.16(b), currently 8 C.F.R. § 1240.10(c), which provides: in a removal proceeding, the IJ "shall not accept an admission of removability from an unrepresented respondent who is . . . under the age of 18 and is not accompanied by an attorney or legal representative, a near relative, legal guardian, or friend". 8 C.F.R. § 1240.10(c). If a minor's admissions of removability cannot be accepted pursuant to this section, the IJ is required to conduct a hearing on the issues. *Id.*

In *Amaya*, however, the BIA clarified that the regulation does *not* preclude an IJ from accepting a minor's admissions to *factual allegations*. *Amaya*, 21 I. & N. Dec. at 586. Rather, the IJ "must consider the reliability of the testimony given by such a minor in response to the factual allegations made against him

11

in determining, after a comprehensive and independent inquiry, whether there is clear, unequivocal, and convincing evidence of the minor's [removability]". *Id.* at 587. If the IJ determines the minor "is both capable of understanding, and in fact understands, any facts that are admitted", those facts may form "the sole basis of a finding that the minor is [removable]". *Id.*

The BIA proceeded in *Amaya* to find that the minor's unclear and equivocal testimony did not support the IJ's finding of removability. *Id.* at 588. The BIA found, however, that the minor's admission that he was born in Honduras was clear, equivocal, and convincing evidence of alienage that shifted to him "the burden of showing the time, place, and manner of his entry". *Id.* The matter was remanded to the IJ for the minor to satisfy that burden. *Id.*

Here, the BIA concluded that *Amaya* did not preclude the IJ's accepting Gonzalez' statements to the immigration officer, as reflected in the I-213, without undertaking any further inquiry. The BIA explained that, although *Amaya* prohibited an IJ from accepting an unaccompanied and unrepresented minor's admission to a *charge of removability*, the IJ could accept such a minor's admissions to *factual allegations*, so long as "the minor's age, pro se and unaccompanied status, and the reliability of the minor's statements were taken into consideration".

Even assuming the regulation at issue is ambiguous, federal courts give deference to an administrative agency's interpretation of its own regulations if those regulations are ambiguous. *See Singh*, 436 F.3d at 487 (citing *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984)). On the other hand, the BIA is required to follow its own precedent, unless it is overruled. *Galvez-Vergara v. Gonzales*, 484 F.3d 798, 802 (5th Cir. 2007).

The BIA determined correctly that the IJ did not violate *Amaya*. Gonzalez denied the charge of removability; therefore, *Amaya* is inapposite on that issue. As to Gonzalez' admissions to factual allegations made during the interview with the immigration officer, as reflected in the I-213, he prevented the IJ from conducting an *Amaya* inquiry by invoking his Fifth Amendment right against self-incrimination. An alien minor cannot fault an IJ for failure to inquire into his capacity when, as here, he declines to testify at a removal hearing, and there would be no criminal consequences had he chosen to do so.

The opinion concurring in the judgment asserts the above statement about Gonzalez' preventing the IJ from conducting the *Amaya* inquiry is "factually inaccurate" because the Fifth Amendment was invoked only *after* admission of the I-213. Of course, had the Fifth Amendment not been invoked, and had Gonzalez' testimony raised concerns about the admission of the I-213, perhaps a form of *Amaya* hearing would have ensued that might have caused reconsideration of the I-213's admission. Obviously, Gonzalez' invocation precluded that possibility.

D.

Gonzalez' claim that the IJ erred by not allowing him to cross-examine the I-213's preparer is also without merit. In that regard, IJs must conduct removal proceedings "in accord with due process standards of fundamental fairness". *Olabanji v. INS*, 973 F.2d 1232, 1234 (5th Cir. 1992). (Contrary to the position of the opinion concurring in the judgment, and on this record, this issue was raised sufficiently at the removal hearing.)

Due process standards require, *inter alia*, that, in removal proceedings, aliens be afforded a reasonable opportunity to cross-examine witnesses

presented by the Government. *See* 8 C.F.R. § 1240.10(a)(4), *see also Espinoza v. INS*, 45 F.3d 308, 311 (9th Cir. 1995). There are some exceptions to the right of cross-examination, however. "[P]eople may not assert a cross-examination right to prevent the government from establishing uncontested facts". *Olabanji*, 973 F.2d at 1234-35 n.1. Furthermore, the form I-213 is "essentially a recorded recollection of a conversation with [an] alien", and it is generally admissible unless the alien shows the statements reflected in the I-213 are not his, or that they were obtained through coercion. *See Bustos-Torres*, 898 F.2d at 1056 (holding the I-213 was properly admitted where the statements were those of the alien, there was no attempt to "impeach the information on the form", and the alien pleaded the Fifth Amendment).

As discussed, at the removal hearing on 19 February 2004, Gonzalez did not contest the veracity of his statements in the I-213. His subsequent affidavit asserting coercion by the immigration officer was presented to the IJ at the 20 April 2004 hearing on relief from removal, after both parties had rested on the issue of removability on 19 February 2004 and the IJ had found Gonzalez removable as charged that same day. At the 19 February removal hearing, he also invoked his Fifth Amendment right to silence. Because the I-213 statements were not contradicted or impeached at the removal hearing, the IJ did not err by not allowing Gonzalez to cross-examine the I-213's preparer.

E.

As discussed, in its order of dismissal, the BIA concluded that, in the alternative, Gonzalez' TPS application "alone [was] a sufficient basis on which to sustain the charge" of removability. Because we uphold the BIA's finding of removability based on that finding's being supported by clear, unequivocal, and

convincing evidence, we need not reach whether the BIA's also relying on Gonzalez' TPS application to find removability was erroneous.

### III.

For the foregoing reasons, the petition is DENIED.

HAYNES, Circuit Judge, concurring in the judgment.

I concur in the judgment. However, I diverge from the majority in the reasoning underlying the decisions expressed in sections II.C and II.D. I write briefly to explain.

As *In re Efrain Amaya-Castro*, 21 I. & N. Dec. 583 (BIA 1996), contemplates, an IJ is not permitted merely to accept a minor's admissions to factual allegations expressed in an I-213, procured through an interrogation of an unaccompanied, unrepresented minor. Instead, the IJ must inquire into the reliability of the minor's statements in light of the circumstances surrounding the interrogation. That IJ inquiry did not occur here. The BIA and the majority excuse the IJ's lack of inquiry by stating that Gonzalez "prevented the IJ from conducting an *Amaya* inquiry by invoking his Fifth Amendment right against self-incrimination." That is factually inaccurate. The Fifth Amendment invocation took place *after* the I-213 was already admitted. Thus, its invocation did not preclude an *Amaya*-type inquiry.[1]

Nonetheless, I concur in the decision because, at the hearing in question, Gonzalez's attorney never expressly requested that the IJ conduct an *Amaya* hearing. Having failed to request such a hearing, his complaint

---

[1] Nothing indicates that the IJ concluded that the Fifth Amendment invocation was improper or that it prevented him from conducting a necessary inquiry into the already-admitted I-213. The transcript of the hearing shows that, after discussing for a few pages whether Gonzalez had any legitimate fear of criminal prosecution, the IJ ruled as follows: "I will go ahead and allow you to make a blanket Fifth Amendment assertion on his right to respond and *I think that's probably appropriate under the circumstances . . .* instead of having him come up and attempt to go through you, *trying to get him to assert a right that he has, that, or maybe he doesn't have, I'm not exactly certain on that . . . .*" (emphasis added). Thus, the IJ *sustained* the blanket assertion.

16

about the lack of a hearing rings hollow. *Hannah v. United States*, 523 F.3d 597, 600 (5th Cir. 2008) ("arguments raised for the first time on appeal will not be considered" (citation omitted)).

Similarly, I disagree with the discussion in section II.D, and it is unnecessary. Although Gonzalez's attorney "invoked the right to cross-examine" the I-213 preparer, he never stated that the IJ should summon the preparer, and he did not otherwise request the preparer's presence there. He never obtained a ruling from the IJ one way or the other on whether the IJ would summon the preparer, and we have no information about whether the preparer was nearby or far away.[2] Thus, Gonzalez failed to preserve any error on this point, and it is unnecessary to reach the merits of this argument.

---

[2] In the context of making numerous objections to admission of the I-213, Gonzalez's attorney stated: "And, so I would also invoke respondent's right to cross examine the officer that prepared this document. And, I don't know if the officer's available or not, we will certainly [be] prepared to question him in connection with the interrogation that he conducted." After all the objections were made, the IJ overruled them and admitted the I-213. Gonzalez's attorney never asked to summon the preparer, and the IJ never ruled on that question.